DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Erie County Court of Common Pleas which, following a jury trial, convicted and sentenced appellant, Bryant Jenkins, on one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1), and one count of felonious sexual penetration, in violation of former R.C. 2907.12(A)(2). Appellant also appeals the trial court's subsequent judgment classifying him as a sexual predator under R.C. 2950.09.
On September 13, 1996, appellant was indicted on the above charges which stem from an alleged incident which occurred on July 20, 1996. On that date, appellant was at the home of his cousin, Steve Jenkins. The alleged minor victim, Nadine B., lived next door. According to the testimony presented at trial, Nadine had known appellant for approximately one month and had "bummed" cigarettes from him. Immediately prior to the alleged incident, appellant and Nadine were sitting on the front steps of the Jenkins' residence smoking cigarettes. Appellant asked Nadine if he could see her television, she said yes and they proceeded into her home. He then asked her if he could feel her breasts and she said yes. Appellant then felt Nadine's breasts under her bra. Nadine testified that she did not want him to touch her breasts. After a few minutes, appellant and Nadine went outside and smoked another cigarette.
When they finished smoking, they went back into the house to look at the stereo. Appellant unbuttoned and unzipped Nadine's shorts and put his finger in her vagina. Nadine told him to stop and he complied. They then went back outside.
Appellant, then thirty-eight years old, was charged with purposely compelling Nadine, by threat or force, to certain sexual activity. Appellant was also charged with inserting his finger into Nadine's vagina, without permission to do so and by threat or force. Nadine is a fifteen year old female who is mildly mentally retarded.
Appellant pled not guilty to the charges on September 27, 1996. A jury trial commenced on April 4, 1997, and appellant was found guilty of both counts of the indictment. On April 24 and April 25 1997, a sexual predator hearing was held and evidence and testimony was presented. The trial court, on May 1, 1997, adjudicated appellant a sexual predator.
Appellant filed a timely notice of appeal on May 30, 1997. This court, on December 22, 1997, sua sponte dismissed appellant's appeal finding that appellant failed to file his assignments of error and merit brief. A motion for reconsideration was denied on February 18, 1998.
Thereafter, on May 13, 1999, appellant filed an application to reopen his appeal arguing ineffective assistance of appellate counsel. This court granted the application on August 3, 1999, and the case proceeded accordingly. Appellant now presents the following assignments of error:
 "ASSIGNMENTS OF ERROR "I. The Trial Court Erred to the Prejudice of Appellant By Permitting Testimony Regarding The Psychological Make-up of the Victim
 "A. Mr. Perrin's lay testimony regarding different kinds of abusers was a legal conclusion, irrelevant, prejudicial, and inadmissable `Profilist' testimony
 "B. The testimony of Linda Gaines was a legal conclusion, irrelevant, prejudicial, and a violation of the rule against hearsay
 "C. Linda Gaines' testimony about her opinion that the victim was being truthful should have been excluded from the jury.
 "D. The testimony of Dr. Smith regarding the victim's propensity to be manipulated was irrelevant and prejudicial
 "II. The Trial Court Erred, Pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, to the Prejudice of Appellant By Precluding His Trial Counsel From Cross-Examining Linda Gaines as to Prior Sexual Acts Under the Rape Shield Statute and By Not Resolving the Issue in Chambers
 "III. Appellant Was Denied His Sixth Amendment Right to Effective Assistant [sic] of Counsel By Failing to Move To Suppress Certain Evidence
"A. Analysis
 "B. Appellant's trial Counsel failed to suppress his arrest pursuant to the Fourth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution
 "C. The failure to suppress evidence gained from the unlawful arrest of Appellant prejudiced Appellant because his incarceration was impermissibly testified to at trial
 "IV. Appellant was Denied his Sixth Amendment Right To Effective Assistance of Counsel by Failing To Object and/or Moving To Exclude Unlawful Testimony
 "A. Detective Prewitt's testimony about what constituted a violation of law should have been excluded from the jury
 "B. Detective Prewitt's testimony about his opinion that the victim was being truthful should have been excluded from the jury
 "V. The Trial Court Erred To The Prejudice of Appellant By Overruling His Motion For Acquittal Timely Made At The Close of The State's Case
"A. Standard of review
"B. Gross Sexual Imposition
"C. Felonious Sexual Penetration
 "VI. The Trial Court Erred To The Prejudice of Appellant By Instructing The Jury On The Definition of Force, Pursuant to Inapplicable Case Law
 "VII. The Trial Court's Finding of `Guilty' To Both Counts Was Against The Manifest Weight of The Evidence
 "VIII. The Trial Court Erred To The Prejudice of Appellant By Adjudicating Him a `Sexual Predator'"
In his first assignment of error, appellant challenges the admission of certain portions of the testimony of Christopher Perrin, Linda Gaines, and Dr. Laurel Smith. We shall examine each witness in this order.
Christopher Perrin, Director of Intake at Erie County Juvenile Court, testified that Nadine came to talk to him on July 24, 1996. Perrin testified that Nadine relayed to him the events of July 20, 1996, and that she seemed distraught.
Appellant finds objectionable Perrin's reference to abuse, sexual or physical, and abused children in general. Appellant argues that the reference to abuse is prejudicial in that it compelled the jury to be sympathetic toward Nadine. Appellant also points to Perrin's testimony wherein he describes different types of "abusers" and their methods of executing certain types of abuse. Appellant argues that such testimony is "profilist" and prejudicial to appellant.
Perrin testified that upon receipt of an allegation of "sexual abuse" he is required by law to report it to the proper authorities. Appellant's trial counsel objected and the following bench conference took place:
 "THE COURT: Oh, but he used the word sexual abuse and that is prejudicial. Do you want the last question and answer stricken, Mr. Oglesby, or do you want to handle it another way?
 "MR. OGLESBY: (Inaudible) I want to ask him some questions, okay (inaudible).
"THE COURT: Not from here or now?
"MR. OGLESBY: No.
 "THE COURT: And you don't want any other instruction given to them right now?
"MR. OGLESBY: (Inaudible).
"THE COURT: Then we'll leave it right where it stands."
On cross-examination, trial counsel attempted to elicit testimony that Nadine may have been sexually abused previously and had been sexually active. The trial court sustained the state's objection.
Because trial counsel did not wish to strike Perrin's reference to sexual abuse and, in fact, questioned Perrin about alleged prior sexual abuse, trial counsel waived any error with the exception of plain error. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long
(1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
Upon review of the disputed testimony we cannot say that the reference to sexual abuse definitely affected the outcome of the trial.
Appellant also contends that Perrin was erroneously permitted to present testimony as to different types of "abusers". In support of his argument, appellant cites State v. Roquemore (1993), 85 Ohio App.3d 448. In Roquemore, an expert styled as a "criminal profilist" testified about a crime scene assessment he had conducted relative to rape and involuntary manslaughter charges. The expert testified that the crime scene "fell `* * * into patterns of known violent behavior * * *' that he had studied in the past." Id. at 452. The expert further stated that the case fit into an "anger retaliatory type of motivational structure * * *." Id. at 454. The appellate court found the admission of the testimony to be plain error. Id. at 458.
In the instant case, Perrin testified generally as to different types of "abusers". He testified that with each type of abuser there is generally a "grooming period, a period of getting to know the person, picking out your victim, * * *." Perrin did not testify as to a specific type of abuser in reference to appellant. Further, unlike Roquemore, Perrin had personal contact with the alleged victim and his testimony was not as a "profilist"; rather, the main purpose of his testimony was to bolster the credibility of Nadine. Accordingly, we find that any alleged error as to Perrin's testimony was harmless.
Appellant next contends that the trial court abused its discretion when it permitted the testimony of Linda Gaines, Nadine's mental health therapist, regarding Nadine's mental handicap. Such testimony was introduced as evidence of the element of force. Appellant also disputes the admissibility of Gaines' testimony as to the truthfulness of Nadine's allegations.
As to Nadine's mental handicap, Gaines testified that Nadine is chronologically fifteen years old but mentally functions like a ten year old. She further stated that Nadine was afraid of appellant during and after the alleged incident.
Arguing that appellant's mental handicap could not satisfy the element of force, appellant attempts to distinguish State v. Eskridge (1988),38 Ohio St.3d 56. In Eskridge, the Ohio Supreme Court held that the force necessary to commit rape may be less than that required for persons of equal age, size, and strength, where the victim is a child of tender years and the abuser is a parent. The court stated that the force used need not be "overt and physically brutal, but can be subtle and psychological". Id. at 58-59. The victim in Eskridge was four years old at the time of the rape. Id. at 56.
Following Eskridge, Ohio courts have held that a person of authority, not necessarily a parent, can be shown to have exerted psychological force over a child sufficient to satisfy the statutory element. See Statev. Dye (1998), 82 Ohio St.3d 323; State v. Musgrave (Nov. 25, 1998), Summit App. No. 18260, unreported (family friend and victims ranging from seven to thirteen at the time of the offenses); State v. Sidlovsky (July 10, 1996), Lorain App. No. 95CA006253, unreported (neighbor and fourteen year old).
In State v. Mangus (Feb. 8, 1996), Cuyahoga App. No. 68679, unreported, cited by the state, appellant, a forty-nine year old man, was convicted of raping a seventeen-year old mentally retarded woman with the mental capacity of a three or four-year old. The court found the requisite element of force, in part, based upon the relative size, strength and age of the parties and the fact that appellant took advantage of the victim's excitement and interest in bowling to lure her into his home.
In Mangus, the court considered the victim's mental capacity in determining whether the element of force had been established. We agree that the mental functioning of a victim is not insignificant in determining whether psychological force was used and find appellant's arguments relative thereto unpersuasive.
Appellant next argues that Gaines' testimony regarding Nadine's truthfulness was improperly admitted. The disputed testimony reads:
 "Q: Based on your knowledge of your client over all this period of time, prior to the July 20, 1996 incident, would it be your opinion that something did not happen based upon what she was able to tell you?
"A: No.
"Q: Do you think; why do you say that?
 "A: Because I've never encountered anyone who has lied about this type of situation. And because I feel as if I know her pretty well and because based on her emotional response, her behavioral response, there will be no reason for her to make this up because the intensity with which she came in there, the pain which I saw, I believed her.
"Q: As her counselor?
"A: Yes."
Appellant argues that Gaines should not have been permitted to testify as to her belief that Nadine was being truthful. Appellant supports his argument with the Ohio Supreme Court case State v. Boston (1989),46 Ohio St.3d 108. In Boston, the court found that it was proper for the court to permit testimony from experts that the child victim was sexually abused. Id. at 128-129. The court, however, further found that testimony by the same experts as to the victim's veracity was inadmissible. Id.
The state, on the other hand, argues that the testimony is admissible, not prejudicial, citing State v. Netherland (1999), 132 Ohio App.3d 252. In Netherland, a children's services investigator testified that she always believes children regarding allegations of abuse unless she has a reason not to. Id. at 259. When asked by the state "`how it is that you believed [the victim],'" she stated that if a child is untruthful there are "holes" in the story and that there was no holes in the victim's story. Id.
Addressing the argument that the investigator improperly testified as to the veracity of the victim, the Netherland court concluded that defense counsel initiated the line of testimony and, that while the state's question was close to violating Boston, the investigator's answers did not cross the line. Id.
In the instant case, because appellant's trial counsel did not object to the testimony, we must consider whether the admission of the testimony was plain error. State v. Long, 53 Ohio St.2d at paragraph two of the syllabus.
Upon review of Boston and Netherland, we find that Gaines' testimony was violative of Boston. Gaines' statements that "there would be no reason for her to make this up" and that Gaines "believed her" cumulatively amount to an impermissible comment on Nadine's veracity. While we find that the admission of the testimony was error, we further find that it was not so pervasive or central to the state's case that it rises to the level of plain error.
At this point in our analysis, we find it necessary to address out of order a sub-part of appellant's fourth assignment of error. Appellant argues that his trial counsel was ineffective in failing to object and/or move to exclude Prewitt's statement as to the truthfulness of Nadine. Prewitt's testimony, during recross-examination, is as follows:
 "Q: Well, how do you know that it wasn't intimidation or maybe she was just fabricating?
"A: I don't know how to answer.
"Q: I mean —
"A: I know in my heart she wasn't fabricating."
Upon review, this court agrees with the state in that any error as to the admissibility of this testimony was invited by trial counsel's questioning. We must, however, determine whether trial counsel was ineffective in failing to request that Prewitt's answer be stricken. In general, failure to object or move to strike an answer falls within the realm of trial tactics and does not establish ineffective assistance of counsel. State v. Hunt (1984), 20 Ohio App.3d 310, 311. Additionally, a trial counsel's decision to engage in a particular line of questioning on cross-examination is considered trial strategy and will not be reversed on appeal. State v. Clayton (1980), 62 Ohio St.2d 45.
Apparent from the trial transcript, appellant's trial counsel was trying to convince the jury that the alleged sexual contact was consensual and/or that Nadine was fabricating, at minimum, the portion of her story regarding consent. Thus, despite the unfortunate answer and lack of forethought during questioning, trial counsel's attempt to establish that Nadine was "fabricating" the story was not grossly unreasonable. We do find, however, that trial counsel should have requested that the answer be stricken. Now we must determine whether, absent trial counsel's ineffectiveness, a reasonable probability exists that the outcome of the trial would have been different. State v.Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. We cannot say that in this case.
Examined separately, the erroneous admission of Gaines' and Prewitt's testimony may not have risen to the level of plain error or ineffective assistance of counsel; however, their cumulative effect must not be ignored. We therefore find that, cumulatively, the testimony as to Nadine's veracity unavoidably prevented substantial justice from being done in this case and, therefore, constitutes reversible error.
In the fourth and final sub-part of appellant's first assignment of error, appellant disputes the admissibility of testimony as to Nadine's propensity to be manipulated. Dr. Laurel Smith, a psychologist, testified that she, upon referral from Linda Gaines, conducted a series of tests in order to evaluate Nadine's intelligence level and assess her level of trauma resulting from alleged incident of July 20, 1996. Smith stated that based upon the various tests, she concluded that Nadine has the intelligence of a ten year old and has problems with comprehension. Smith explained that Nadine has poor judgment and tends to be very impulsive. She testified that Nadine has dependency needs and will do essentially anything an adult tells her to do. Smith also testified as follows:
 "Q: Have you found that this category of individuals [mildly mentally retarded] can be manipulated?
"A: Yes.
"Q: Please explain.
 "A: If you think of it in terms of her ability to comprehend situations around her, that's severely impaired. And in addition, if you look at her age, roughly, her mental age being a 10-year-old, 10-year-olds basically listen to adults."
Appellant contends that Smith's testimony that Nadine is easily manipulated and submits to the demands of adults is prejudicial and irrelevant. We agree that the fact that Nadine will do anything an adult tells her to do, technically, has no bearing in this case. We do find, however, that her mental capacity is relevant as is the fact that she is easily manipulated. No objection was made as to this testimony, and, upon review, find that any error was harmless.
In appellant's second assignment of error, he argues that the trial court erred when it precluded cross-examination of Linda Gaines as to prior sexual acts of Nadine pursuant to the "rape shield" statute, R.C.2907.02(D).
R.C. 2907.02(D) provides, in relevant part:
 "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
Appellant argues that, during cross-examination, appellant's counsel attempted to question Gaines as to Nadine's ability to consent to sex. Appellant contends that he could have shown her ability to consent through evidence of her prior sexual acts. Thus, appellant argues, any sexual acts with him were consensual in nature. As to this assignment of error, we find appellant's reasoning is flawed. Even if appellant were to show that Nadine had prior consensual sex, that does not demonstrate that appellant's actions in the instant case were any way welcome. Accordingly, appellant has failed to demonstrate, under R.C. 2907.02(D), how such evidence is "material to a fact at issue in the case." Appellant's second assignment of error is not well-taken.
Appellant's third assignment of error alleges ineffective assistance of trial counsel. Specifically, appellant claims that his trial counsel failed to suppress any evidence gained by appellant's unlawful arrest.
Legal representation is constitutionally ineffective, and a basis for reversal or vacation of a conviction, when counsel's performance is deficient and results in prejudice to the accused. Strickland v.Washington (1984), 466 U.S. 668. In order to prove ineffective assistance of counsel, a defendant must show (1) that his counsel's performance fell below an objective standard of reasonable representation in some particular respect or respects and (2) that he was so prejudiced by the defect or defects that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different.State v. Bradley, 42 Ohio St.3d 136 at paragraphs two and three of the syllabus, following Strickland.
Appellant's ineffective assistance of counsel claim relative to appellant's arrest is based upon the following facts. Sandusky Police Detective Roy Prewitt testified that Erie County Children's Services contacted him, on July 26, 1996, regarding Nadine's allegations.
Prewitt questioned Nadine as to the alleged events. He also went to Nadine's home and surveyed where Nadine had indicated the incident took place.
Prewitt then went to appellant's apartment "to get his side of the story." Prewitt indicated that he knocked on the door, identified himself and asked if appellant would be willing to accompany him to the police station for an interview. According to Prewitt, at first appellant agreed to be interviewed and, after a moment, decided that he would not go to the station without an attorney.
At that point, Prewitt began questioning appellant regarding where he was from and how long he had been living at the apartment. Prewitt discovered that appellant did not have a job. Prewitt testified that based upon appellant's responses he became concerned. He testified:
 "* * * [A]t that point I was stuck with the situation, I have a serious accusation made by a young girl that (inaudible) and I have this man who doesn't want to talk to me. I wasn't for sure if he was going to be staying here because he didn't seem to have any roots here as far as any job that would hold him or anything, it sounded like he got around. He was refusing to talk to me and I didn't know, with the victim still being next-door to his cousin or whatever, so I charged him at that time and told him he was under arrest."
Upon making the arrest, Prewitt informed appellant he was being arrested for gross sexual imposition.
Appellant argues that his trial counsel erred in failing to file a motion to suppress any and all evidence gained pursuant to appellant's arrest because Prewitt did not have probable cause to effectuate the arrest.
Probable cause for a warrantless arrest exists when the arresting officer has within his or her knowledge facts and circumstances which amount to reasonable and trustworthy information sufficient to warrant a prudent person in believing that a crime or offense has been committed and that the person to be arrested is the probable offender. Beck v. Ohio
(1964), 379 U.S. 89; State v. Timson (1974), 38 Ohio St.2d 122; State v.Kobi (1997), 122 Ohio App.3d 160, 169.
Upon review of Prewitt's testimony, quoted above, we cannot say that appellant's trial counsel was ineffective in failing to raise the issue of whether probable cause existed to arrest appellant. We believe that Prewitt's interview of Nadine gave him sufficient probable cause to arrest appellant even if the allegations later proved to be false.
Along this vein, appellant further contends that witness Linda Gaines' reference to appellant's incarceration was prejudicial to appellant. Because we have already concluded that appellant's trial counsel's failure to file a motion to suppress evidence gained from the arrest did not fall below the standard of reasonable representation, we need not address the second prong, prejudice, necessary to determine the existence of ineffective assistance of counsel. However, even reviewing Gaines' reference to incarceration, appellant has failed to establish that such reference effected the outcome of the trial.
Appellant's third assignment of error is not well-taken.
In appellant's fourth assignment of error, he argues that his trial counsel was ineffective because he failed to object and/or move to exclude "unlawful testimony". The unlawful testimony complained of concerns the testimony of Detective Prewitt. A portion of appellant's fourth assignment of error has previously been addressed.
Appellant's remaining argument is that Prewitt should not have been permitted to testify that appellant's alleged placing his finger in Nadine's vagina was a violation of law. Appellant asserts that the statement is outside the parameters of Evid.R. 704. The rule states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."
The testimony appellant finds objectionable is as follows:
 "Q: During your interview with Janice Nadine, did she indicate that she told him to stop?
"A: Yes.
"Q: That's one of the things you covered; is that correct?
"A: That is correct.
"Q: Why is that, Officer? Why do you cover that area?
 "A: Because to find out if it's consensual or not, if it was against her will. Him being 38, her being 15, if he by force stuck his finger in her vagina. Whether he stopped when she said no or not it's still a violation of the law. She did not want it to happen and it happened, and that's why she reported it."
The purpose of Evid.R. 704 is to permit opinion testimony on the ultimate issue so long as it does not impinge on the function of the trier of fact. Bostic v. Connor (1988), 37 Ohio St.3d 144, 148-149. In this case, the parties do not necessarily dispute that the incident took place. The issue is whether it was consensual or, as required by the statutes, whether threat or force was used. Prewitt's testimony specifically states "if he by force," [emphasis added] he did not testify that, in his opinion, force was used. Accordingly, the trial court did not abuse its discretion in permitting such testimony.
In appellant's fifth assignment of error, appellant argues that the trial court erred which it denied his motion for acquittal made at the close of the state's case. Based upon our finding that the admission of testimony as to Nadine's veracity constitutes reversible error, we find appellant's fifth assignment of error moot.
In his sixth assignment of error, appellant contends that the trial court erred in instructing the jury on the element of force pursuant toState v. Eskridge, 38 Ohio St.3d 56.
A trial court is required to give all instructions necessary for a jury to weigh the evidence and discharge its duty as factfinder. State v. Joy
(1995), 74 Ohio St.3d 178, 181. The trial court must give instructions on all issues that are raised by the evidence and that are correct, pertinent, and timely presented. Id.
A determination as to which jury instructions are proper is a matter left to the sound discretion of the trial court. State v. Guster (1981),66 Ohio St.2d 266, 271. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v. Huettner (1971), 28 Ohio St.2d 54, syllabus.
The trial court instructed the jury as follows:
 "Force means any violence, compulsion, or constraint physically exerted, but force need not be overt and physically brutal, it can be subtle and psychological upon or against any person or thing such as upon a person of tender years. The same degree of force and violence may not be required upon a person of tender years as would be required for the parties more nearly equal in age, size, and strength."
Upon review of the testimony presented at trial, we find that there was evidence presented that could convince a reasonable juror that psychological force was used. For example, Gaines, Nadine's mental health therapist, testified that by giving cigarettes to Nadine, appellant formed a bond with her and impressed her by giving her something she is not supposed to have.
Accordingly, we find that the trial court did not abuse its discretion when it instructed the jury as to the element of force. The sixth assignment of error is not well-taken.
Appellant next argues, in his seventh assignment of error, that the guilty verdicts were against the manifest weight of the evidence. Based on our finding of reversible error, the assignment of error is moot.
Based upon our disposition of the above assignments of error, we find that appellant's eighth assignment of error, relative to his sexual predator classification, is well-taken. Accordingly, the judgment entry adjudicating appellant as a sexual predator is vacated.
On consideration whereof, we find that, while each assignment of error standing alone is not enough to warrant reversal, the cumulative effect of the sub-assignments of error contained in Assignments of Error Nos. I and IV render the appellant's first, fourth and eighth assignments of error well-taken. The judgment of conviction of the Erie County Court of Common Pleas is reversed and remanded for a new trial, and the judgment adjudicating appellant as a sexual predator is vacated. Appellee is assessed the court costs of this appeal.
 ______________________ James R. Sherck, JUDGE
Mark L. Pietrykowski, P.J. CONCUR.
Melvin L. Resnick, J. CONCURS IN JUDGMENT ONLY.